UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIE SEALS, | ) |
| | ) |
|    Plaintiff(s), | ) |
| | ) |
|    vs. | )   Case No. 4:20-cv-01656-SRC |
| | ) |
| WRIGHT MEDICAL TECHNOLOGY, INC., | ) |
| | ) |
|    Defendant(s). | ) |

**Memorandum and Order**

The Court previously partially granted and partially denied [66] Wright Medical's Motion for Summary Judgment. Doc. 90. In that Order, the Court reserved ruling on Wright Medical's summary-judgment motion on Plaintiff Willie Seals's punitive damages claim. Having considered the issue, the Court now denies the motion.

**I.     Background**

The Court recounted the facts of this case in its Order on Wright Medical's summary-judgment motion and the parties' respective motions to exclude expert testimony. *See* Doc. 90. In the same Order, the Court explained some of the medical terminology at issue in this case and does not repeat those explanations here.

The following facts are undisputed for purposes of the present motion. Wright Medical is incorporated in Delaware and its principal place of business is in Tennessee, where its corporate decision-making took place. Doc. 31 at ¶ 4; Doc. 78 at ¶ 36. Wright Medical designed and manufactured its Dynasty and Conserve devices in Tennessee. Doc. 78 at ¶ 32.

Willie Seals is an Illinois resident and citizen. Doc. 78 at ¶ 36; Docs. 140, 156. Seals's left-hip replacement and revision surgeries took place at Barnes Jewish Hospital in St. Louis,

Missouri. Doc. 78 at ¶ 8; Doc. 67-10 at pp. 2–3. A Wright Medical salesman appears to have delivered the components that Dr. Barrack implanted into Seals. Doc. 67-7. All of the components that Dr. Barrack implanted into Seals received clearance from the FDA's 510(k) process before Seals's surgery. Doc. 78 at ¶ 10. When asked whether he recalled reviewing "any surgical techniques or brochures or pamphlets of any type relating to the Dynasty system," Dr. Barrack stated: "No. I'm sure I did, but I don't – this was 12 years ago." Doc. 78 at ¶ 18; Doc. 78-7 at p. 14:8–12.

## II.     Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Self-serving, conclusory statements without support are insufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

2

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. Discussion

#### A. Choice of law

The parties dispute which state's law governs Seals's claim for punitive damages. *See* Doc. 68 at pp. 25–28 (Wright Medical arguing Tennessee law applies); Doc. 77 at pp. 10–11 (Seals arguing Missouri law applies). "District courts sitting in diversity apply the choice-of-law rules of the state where they sit." *Winter v. Novartis Pharms. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014) (citing *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991)). "Before applying the forum state's choice-of-law rules, however, [district courts] must first determine whether a conflict exists." *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (citation omitted). If the outcome would be the same under either state's law, the Court need not decide which state's law applies. *Id.*

In its summary-judgment memorandum, while Wright Medical does not directly address whether a conflict exists, it does cite a Tennessee statute providing that:

> punitive damages shall not be awarded in a civil action involving a drug or device if the drug or device which allegedly caused the claimant's harm . . . [w]as manufactured and labeled in relevant and material respects in accordance with the terms of an approval or license issued by the federal food and drug administration under the Federal Food, Drug, and Cosmetic Act . . . .

Tenn. Code Ann. § 29-39-104(d)(1); *see* Doc. 68 at p. 29. Wright Medical also cites a federal district court case applying Tenn. Code Ann. § 29-39-104(d)(1)'s punitive-damages bar to a 510(k)-cleared device. *See* Doc. 68 at p. 29 (citing *Heath v. C.R. Bard Inc.*, No. 3:19-CV-803, 2021 WL 3172315, at *14 (M.D. Tenn. July 27, 2021) (unpublished)).

3

In his response, Seals argues that no conflict exists, because "Missouri and Tennessee punitive damages law are essentially the same," but does not address Tenn. Code Ann. § 29-39-104(d)(1) or *Heath*. *See* Doc. 77 at pp. 9–11.  In its reply, Wright Medical reiterates that § 29-39-104(d)(1) applies, and argues that because "Missouri does not have a similar statute precluding punitive damages on this basis," the two states' laws conflict.  Doc. 82 at p. 11.

For choice-of-law purposes, the Court assumes that Tenn. Code Ann. § 29-39-104(d)(1) does not violate the Tennessee Constitution, and that § 510(k) clearance falls within § 29-39-104(d)(1)'s definition of an FDA "approval or license."  *See Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 364 (6th Cir. 2018) (concluding that the Tennessee Supreme Court would hold that § 29-39-104's cap on punitive damages *violates* the Tennessee Constitution); *McClay v. Airport Mgmt. Servs., LLC*, 596 S.W.3d 686, 693 n.6 (Tenn. 2020) (holding that § 29-39-104's cap on noneconomic damages *does not violate* the Tennessee Constitution); *Nolen v. C.R. Bard Inc.*, 533 F. Supp. 3d 584, 593–96 (M.D. Tenn. 2021) (concluding that the Tennessee Supreme Court would not extend the holding in *Lindenberg* to invalidate § 29-39-104(d)(1)(A), and "would be more likely to adopt the more expansive interpretation of "approval or license" that would include § 510(k) clearance."); *see also Winter*, 739 F.3d at 410 (evaluating choice-of-law question after stating that the New Jersey Products Liability Act would bar plaintiff from recovering punitive damages on a failure-to-warn claim involving prescription drugs).  The Court assumes the laws of the two states conflict, and applies Missouri choice-of-law rules to determine which state's law governs Seals's punitive-damages claim.

"Under Missouri's choice-of-law rules, courts apply the substantive law of the state with the 'most significant relationship' to the occurrence and the parties."  *Winter*, 739 F.3d at 410 (quoting *Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 621 (8th Cir. 2004)); *see also Thompson v.*

4

*Crawford,* 833 S.W.2d 868, 870 (Mo. 1992). Missouri, following the Restatement (Second) of Conflict of Laws, requires courts to consider four types of contacts "when determining the applicable law for tort actions": (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicil, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered." *Winter*, 739 F.3d at 410 (quoting *Fuqua Homes,* 388 F.3d at 621 (citing Restatement (Second) of Conflict of Laws § 145 (1971))).

"More importantly, for personal injury actions, Missouri applies the law of the place of injury, unless some other state has a more significant relationship." *Id.* (citing *Thompson,* 833 S.W.2d at 870). "Missouri's formulation 'essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred.'" *Id.* (quoting *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994)) (citing Restatement (Second) of Conflict of Laws § 146 (1971)). To overcome this presumption, a party must show that another state has an "overriding interest" based on the factors in section 6 of the Restatement, "taking into account the contacts listed in section 145 according to their relative importance to the particular issue." *Dorman*, 23 F.3d at 1358. Although the Court should not abdicate its responsibility to determine which state has the most significant contacts, "where it is difficult to see clearly that a particular state has the most significant relationship to an issue," the Court "should apply the substantive law of the place where the injury occurred." *Id.* (citing *Kennedy v. Dixon*, 439 S.W.2d 173, 181 (Mo. 1969)). With these choice-of-law rules in mind, the Court turns to the question of whether Tennessee or Missouri law applies to the punitive-damages claim in this case.

5

In his one paragraph addressing the issue, Seals relies on the Restatement's place-of-injury presumption for personal injury actions in arguing that because the injury occurred in Missouri, Missouri law should apply to his punitive-damages claim. Doc. 77 at p. 11 (citing *Winter*, 739 F.3d at 410). Wright Medical makes two arguments for overcoming this place-of-injury presumption. Doc. 68 at pp. 25–28. The Court finds these arguments unpersuasive.

First, Wright Medical argues that Tennessee has the most significant relationship to Seals's punitive-damages claim because the conduct that Seals's punitive-damages claim rests on occurred in Tennessee. Doc. 68 at p. 26. Wright Medical points to the fact that it designed and tested its devices in Tennessee, where it also is headquartered and made corporate decisions on these issues. Doc. 68 at p. 26. Similarly, Wright Medical argues that unlike in *Winter*, "there is no evidence in this case that any representations were made to and relied upon by Dr. Barrack in Missouri, or that any Wright Medical sales representatives provided alleged misstatements to Dr. Barrack, or to Plaintiff, in Missouri." Doc. 68 at p. 27.

These arguments relate to the "conduct causing the injury" factor. But although the fact that Wright Medical designed its metal-on-metal devices in Tennessee is "not without significance to the choice-of-law analysis," it does not overcome the place-of-injury presumption here. As the Eighth Circuit stated rejecting a similar argument, "[i]ndeed, to accept [this] argument would render the section 146 [place-of-injury] presumption meaningless in virtually every products liability case, even though section 146 is devoid of language that would suggest an intent to exclude products liability cases from the scope of the presumption." *See Dorman*, 23 F.3d at 1359.

Additionally, the Court notes that Seals bases his punitive-damages claim on Wright Medical's decision to market and sell its metal-on-metal devices to Seals's healthcare providers

6

in Missouri and elsewhere; Seals further argues that Wright Medical did so "without doing adequate testing to ensure the Conserve was reasonably safe for implantation" and "in spite of its knowledge that the Conserve can cause metallosis, tissue destruction, pseudotumors," and other problems, "thereby causing severe and debilitating injuries . . . ." Doc. 1 at ¶¶ 161–62; *see also id.* at ¶ 168 ("Defendants knew of the Conserve's defective and unreasonably dangerous nature, but continued to . . . market, distribute, and sell the Conserve so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff."). Additionally, Wright Medical doesn't dispute that it intended to and did in fact send its hip implant into Missouri to be implanted in a hospital in Missouri; and the company apparently sent a salesman to Missouri to deliver the components that Dr. Barrack implanted into seals. Doc. 67-7; *see generally* Docs. 68, 82. Thus, although Wright Medical may have made its corporate decisions in Tennessee, it deliberately extended its business into Missouri, and the place where the conduct causing the injury occurred includes Missouri to some extent. *Cf. Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1027 (2021) (noting that under Supreme Court precedent, if a car company deliberately extends its business into a state, that state's courts may hold the company accountable for the car catching fire there, even if the company designed and sold the car elsewhere). Wright Medical's first argument for overcoming the place-of-injury presumption fails.

Second, Wright Medical points out that although Seals underwent surgeries in Missouri, he is a resident of Illinois; thus, Wright Medical argues that Missouri has a less significant interest than it would were Seals a Missouri resident. Doc. 68 at p. 27. Wright Medical relies on *Johnny v. Bornowski*, where a Florida resident sued a Missouri resident in Missouri after the parties were in a motor vehicle accident in Oklahoma. No. 10-04008-CV-FJG, 2011 WL

7

6740336, at *2 (W.D. Mo. Dec. 22, 2011). Applying Missouri choice-of-law rules, the court determined that Missouri did not have an overriding interest compared to Oklahoma, the place of injury. *Id.* But *Johnny* does not support Wright Medical's argument here, because the parties agree that Seals's injury occurred in Missouri.

Further, while Tennessee may have an interest in applying its punitive-damages laws to Tennessee corporations, Missouri has an interest in applying its own punitive-damages laws to "inflict punishment and to serve as an example and deterrent to similar conduct" occurring in Missouri. *Vaughan v. Taft Broad. Co.*, 708 S.W.2d 656, 660 (Mo. 1986) (citing *Polk v. Missouri-Kansas-Texas R. Co.*, 174 S.W.2d 176, 180 (Mo. 1943)); *see Winter*, 739 F.3d at 410; *Arie v. Intertherm, Inc.*, 648 S.W.2d 142, 159 (Mo. Ct. App. 1983); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996) ("Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." (citations omitted)).

In *Winter*, the Eighth Circuit observed that while New Jersey—the state where the defendant corporation in that case was headquartered—"may have an interest in its corporations being governed by its punitive damages provisions, . . . Missouri has a strong interest in applying its punitive damages laws to deter conduct by corporations doing business in Missouri that harms Missouri residents." 739 F.3d at 410. Although—unlike the plaintiff in *Winter*—Seals is not a Missouri resident, the focus of punitive damages is on deterring the defendant, not compensating the plaintiff. *See Mansfield v. Horner*, 443 S.W.3d 627, 643 (Mo. Ct. App. 2014) ("While compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct, punitive damages are aimed at deterrence and retribution." (cleaned up) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408,

8

416 (2003))). Thus, despite the difference in residency, the Eighth Circuit's observation in *Winter* about Missouri's interest in "deter[ing] conduct by corporations doing business in Missouri" applies here, because as in that case Missouri is "at least in part, the state of the conduct causing the injury." *Id.* Wright Medical's second argument for overcoming the place-of-injury presumption also fails.

In sum, Wright Medical's arguments fail to overcome the presumption that Missouri—the place where Seals's injury occurred—has the most significant relationship to his punitive damages claim. The Court therefore applies Missouri law to that claim.

**B.     Seals's punitive-damages claim**

Under Missouri law, the Court may award punitive damages only upon a showing that "the defendant showed a complete indifference to or conscious disregard for the safety of others." *Ford v. GACS, Inc.*, 265 F.3d 670, 678 (8th Cir. 2001). The plaintiff must establish the requisite showing by "clear and convincing" evidence. *See Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 111 (Mo. 1996).

Wright Medical argues that it did warn of potential risks, and was diligent and responsible in investigating and marketing the devices at issue in this case. Doc. 82 at pp. 14–15. However, Seals has introduced evidence to the contrary. *See, e.g.*, Doc. 78-5 at pp. 15–17 (Dr. Kantor opining that Wright Medical did not adequately conduct clinical trials or testing in light of known issues with metal-on-metal implants). As the Court held in *Bayes*, though the Court is well aware of the high standard of clear and convincing evidence, the evidence before the Court at this point does not entitle Wright Medical to summary judgment on punitive damages. *See Bayes v. Biomet, Inc.*, No. 4:13-CV-00800-SRC, 2020 WL 5659653, at *2 (E.D. Mo. Sept. 23, 2020).

9

**IV.     Conclusion**

The Court denies [66] Wright Medical's Motion for Summary Judgment on Plaintiffs' claim for punitive damages (count 8).

So Ordered this 7th day of November 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE